## Jones et al. v. Captola Forester Goss.

April 27, 1948.

G. E. Reams for appellants.

Ray O. Shehan and Daniel Boone Smith for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

This case involves the location of the property line between two town lots on Main Street in Harlan, Ky., one owned by appellants and the other by appellee. It had its inception in a suit for ejectment filed by appellee against appellants in which she alleges that a portion of a building erected on appellants' lot encroaches on appellee's adjacent lot. She prays that the true boundary line be determined, that she be restored to possession of her property and the title thereto quieted in her and for damage for $1,000 for its wrongful withholding. Appellants denied the allegations of the petition, pleaded title by adverse possession and pray that they be adjudged the owners of the fee simple title to the property in dispute. By amended answer and counterclaim they ask actual damages in the sum of $500 and punitive damages in the sum of $500 for destruction of a hedge fence of appellants by appellee. On a trial of the issues the jury found for the appellee, thus establishing the boundary line contended for by her but no damages were awarded her. Appellants filed motion and grounds for a new trial partly on the ground of newly discovered evidence, supported by affidavits. From the judgment of the court based on the verdict of the jury and denying a new trial appellants prosecute this appeal.

### Points on Appeal.

Appellants base their appeal on four points: (1) That appellants were entitled to a peremptory instruction; (2) That the verdict is flagrantly against the evidence; (3) Instructions given the jury were erroneous and highly prejudicial to appellants; (4) Appellants were entitled to a new trial by reason of newly discovered evidence. Since the first two points are closely related and are both determined by the consideration of the same evidence, they will be considered together and the other questions separately and in the above order.

## The Evidence.

The evidence introduced by the parties to sustain their respective contentions is diametrically opposite and in hopeless conflict, as is usual in cases of this character. The surveyor-engineer employed by each, sustains the contentions of the side by which he is employed, also as usual with experts, and they reach diametrically opposite conclusions. While surveying is an exact science different conclusions can always be reached when the starting points are different. The parties to this appeal are already familiar with the testimony in this case and it would be of little or no value to the profession and of little value as a precedent to extensively analyze the conflicting testimony and we are only stating such facts as are necessary to understand the case. All the facts concerning the sources of title from a common grantor are stipulated and there is no controversy on this score. Appellee acquired title to her property in 1925, and has lived on it since that time. Appellants acquired title to their property in 1943, and have lived on it since that time. The small house on their lot, located to the rear of the one in which they live, and which small house is the one claimed by appellee to be over her line to the extent of about 18 inches at one corner, was built by Mrs. John H. Blair, one of appellants' predecessors in title, about 7½ years ago. There was formerly a wire fence between the two lots, which fence was on the proper division line. This fence was washed away some years ago by the floods of the Cumberland River which passes by the rear of both lots. Of this old fence only two posts remain standing, one about 25 feet from the front of the property on Main Street and the other about 35 feet from the same point. It is conceded that these two posts are located on the correct line between the two lots. Most of the controversy arises over the location of a third post, now down, but the stump of which remains still visible. Appellants contend that this stump is in the true line and if that is correct, then no part of their house is over on appellee's line. If this stump is not in the true line, is not part of the old division fence, but is the stump of a post set on her property by her son some years ago in his gardening operations, as appellee contends and as her testimony tends to prove, then the house is or may be over the line.

Appellants' evidence tends strongly to prove that this old post stump is the remains of one of the posts in the original division fence and their surveyor took this stump as his starting point in establishing the line between the lots, as now shown on his survey plat filed as an exhibit in the evidence. His only basis for using this as a starting point was the statement to him by Mr. Jones, one of the appellants, that this stump was part of the old division fence. His testimony and his plat of the survey, which is by far the clearer and better plat of the two surveyor witnesses, is considerably weakened by the use as a starting point of the principal point in dispute. On the contrary the blue print of appellee's surveyor is very poor, is upside down on the paper, is almost unintelligible to a layman but he does make a more professional approach to a starting point by beginning his measurements seven lots farther down the street, measuring the frontage of these seven lots, not by proper instrument measurement, but by tape line measurement, and establishing his starting point from a hole drilled in the sidewalk which was established by instrument from the two standing posts conceded to be on the line. These two surveys were put in direct issue, were filed as exhibits and were examined by the jury and the jury in their verdict specifically found in favor of the Blair survey, which was the basis of appellee's claim, and against the Martin survey, which was the basis of appellants' claim.

Another determining point in the testimony is the location of a tree some eight or ten inches in diameter, which appellee testifies she herself set out after she moved to the lot which she occupies. Her testimony all tends to prove that the tree is over on her lot one and one-half to two feet from the old fence line and her survey confirms this. On the contrary appellants' testimony all tends to show this tree is in the old fence line and their survey confirms this. And so on through the evidence. Whatever testimony was brought forward by one side was met with conflicting testimony on the other. It is obvious, therefore, that there is no basis for appellants' contention that they are entitled to a peremptory instruction in their favor. It is equally clear that there is no basis for appellants' contention that the verdict of the jury is flagrantly against the evidence. The

evidence in this case was clearly of that conflicting type that it is the province of a jury to decide and we, as an appellate court, have no right to revalue the evidence and determine the conflicting questions of fact for ourselves.

## The Instructions.

Rejecting instruction "A," offered by appellants, and instruction No. 1, offered by appellee, the court of its own motion gave the following instruction No. 1 which we think fairly and correctly sets out the main issue between the parties based on the evidence:

## No. 1.

"The court instructs the jury that both parties to this suit claim through the same source of title, and that while their predecessors in title owned the land now claimed by plaintiff and defendants, they built a division fence between their lands, and it is agreed by the parties that the two fence posts standing there or near the hedge and up toward the street are a part of this original fence between the lands of plaintiff and defendants, then it is the duty of the jury to find from the evidence offered herein, the true location of this original fence between these lands; if the jury believe from the evidence offered herein that the true location of the original fence is and was as located, described and shown on the map of the surveyor, Art Blair, then you should find for the plaintiff under this instruction; however if the jury should believe from the evidence that the true and correct location of the original fence between these properties was and is as shown and represented on the map of the surveyor, H. L. Martin, then you should so find, and your verdict should be for the defendants herein under this instruction."

Instructions Nos. 2-3-4. By these instructions the court properly submitted to the jury the question of adverse possession raised by the appellants. His instructions followed the general and approved form set out in Sec. 60, page 78, Stanley's Instructions to Juries. These instructions told the jury in substance that if appellants and their predecessors in title had for 15 years or more claimed adversely up to the line located by appellants' own surveyor, H. L. Martin, they should find

for the appellants; if not, then the jury would find for the appellee, and defined adverse possession. We think this fairly submitted the issue on this phase of the question.

Instruction No. 5 given by the court was the same as instruction "E" offered by appellants and permitted recovery not to exceed $500 for destruction of a hedge fence of appellants by appellee, as claimed by appellants' answer. Appellants complain that the court refused to give instruction "F" offered by appellants which would have authorized recovery of an additional $500 punitive damage as claimed in an amended answer. The only proof as to actual damage is appellants' testimony, which placed the value of the hedge fence at $250. Since the jury did not allow appellants compensatory damages, certainly they would not have allowed any punitive damages. Clearly appellants were not prejudiced by refusal to give an instruction on punitive damage and the failure of the court to give the instruction was cured by the verdict of the jury which found in favor of appellee on the main question involved and on the question of damages.

### Newly Discovered Evidence.

Before appellants' motion and grounds for a new trial were passed on by the court they filed additional grounds supported by affidavit of W. T. Jones, one of the appellants, and T. E. Faulkner and A. T. Sims. At the trial appellee's surveyor had testified that the line he had run from the drilled hole starting point in the sidewalk, passing the two standing posts admitted to be on the proper line, touched the small house in dispute on appellants' property 18 inches from its corner, thus showing according to his testimony and survey, that that house was 18 inches over on appellee's line. The affidavits, filed by appellants in support of their grounds for a new trial, were in substance that the two affiants had run a tightly drawn cord from the starting point on the sidewalk to the circle and cross mark made on the house by appellee's surveyor and that it missed one of the posts standing in the admitted line by 14 inches and missed the other by 9¾ inches. This testimony would have contradicted appellee's surveyor but we do not regard this as such newly discovered evidence as

would warrant a new trial. Appellee's surveyor had made his survey and fixed this mark on appellants' house nearly a year before the trial. Even after appellee's surveyor testified and during the progress of the trial, this simple string-stretching test between the two points could have been made and its results introduced in the testimony. We do not think this testimony would have determined the result, that it was largely cumulative and that the judge of the lower court did not abuse his discretion in refusing a new trial on this ground.

We have carefully read all the evidence in this case and the extensive well prepared briefs of both sides. The questions involved were largely factual and the jury after viewing the premises involved and hearing the conflicting testimony decided in favor of appellee, under proper instructions. Under these circumstances we find no ground for reversal of the judgment based on that verdict.

Judgment affirmed.